UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CLIFTON MOFFAT,

          Plaintiff,                CIVIL ACTION NO. 09-14696

       v.                       DISTRICT JUDGE DENISE PAGE HOOD

MICHIGAN DEPARTMENT OF      MAGISTRATE JUDGE VIRGINIA M. MORGAN
CORRECTIONS, PRISON HEALTH
SERVICES, INCORPORATED, ADAM
EDELMAN, HARRIOT SQUIER, REGINA
WALKER, HARESH B. PANDYA, GEORGE
PRAMSTALLER, CRAIG HUTCHINSON,
PATRICIA CARUSO, WALTER F. FINAN,
BETHANY STEVENS, E. SKUTT, CHARLES
MANGUS, J. ARMSTRONG, E. TAYLOR, G.
STEPHENSON, SABRINA AIKEN,
CORRECTIONAL MEDICAL SERVICES,
INCORPORATED, MEHDI ALMASI, ANITA
M. NORONHE, PATRICK J. GEML, HUGH
WOLFENBERGER, JEFFREY STIEVE,
JACQUELINE D. CATCHINGS,

          Defendants.
_____/

## REPORT AND RECOMMENDATION
## TO GRANT MOTIONS TO DISMISS
## CMS DEFENDANTS (D/E #42) and PHS DEFENDANTS (D/E #44)


### I. Introduction

      This is a *pro se* 42 U.S.C § 1983 action in which plaintiff, an inmate in the custody of the

Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff of

-1-

his rights under the United States Constitution through their deliberate indifference to his serious medical needs. The matter comes before the court on defendants Correctional Medical Services, Inc. (CMS), Squier, Walker, Hutchinson, Noronha, Geml, and Almasi's "Motion to Dismiss Pursuant to 42 U.S.C. § 1997e(a) and Fed. Civ. P. 12(b)(6)" (D/E #42) and defendants Prison Health Services, Inc. (PHS), Squier and Edelman's "Motion to Dismiss" (D/E #44).[1] Plaintiff has filed responses in opposition to defendants' motions (D/E #64, #66) and defendants have filed replies to plaintiff's responses (D/E #68, #69).

For the reasons discussed below, this court recommends that defendants' motions to dismiss be **GRANTED** and that the claims against defendants PHS, Edelman, Squier, Walker, Hutchinson, CMS, Almasi, Noronha, and Geml be dismissed pursuant to Fed. R. Civ. P. 12(6) for a failure to state a claim upon which relief can be granted.

Additionally, this court recommends that defendants Finan and Catchings be dismissed *sua sponte* for the same reasons as the defendants who brought the above motions. Those two defendants have not yet been served, but even if they were served, plaintiff has failed to state a claim against them upon which relief can be granted.

---

[1]Defendant Squier is part of both motions before the court because she worked for defendant CMS until April 1, 2009, when CMS's contract with the MDOC ended, and for defendant PHS after April 1, 2009, when PHS' contract with the MDOC began. CMS is handling the representation of Squier for claims arising before April 1, 2009 while PHS is handling the representation for Squier for claims arising after April 1, 2009. This court would note that PHS's motion simply adopts the arguments made with respect to Squier in the earlier motion and there is no need for a separate discussion.

## II. Background

### A. Complaint

On December 2, 2009, plaintiff filed the complaint in this action and, in that complaint, plaintiff alleges that defendants were deliberately indifferent to his serious medical needs while he was an inmate at the Macomb Correctional Facility (MRF) in New Haven, Michigan (D/E #1). Specifically, plaintiff alleges that he suffered an injury to his left knee while playing handball on September 24, 2007. (Complaint - Facts, ¶ 1) Plaintiff had previously suffered an ACL tear in his left knee in 1991 before undergoing a full ACL reconstructions. (Complaint - Facts, ¶ 1) According to plaintiff, his left knee was x-rayed on September 27, 2007 and the x-ray findings provided "[t]he left knee is examined in three projections and demonstrates old orthopedic surgical hardware. No acute process is seen such as fracture or dislocation." (Complaint - Facts, ¶ 3) Plaintiff also alleges that he was only given a handful of Motrin and that his pain continued to increase over the next three weeks. (Complaint - Facts, ¶ 3)

Plaintiff asserts that, on October 10, 2007, he wrote a letter to defendant Wolfenberger, the Warden at MRF, complaining about his excessive pain and the incompetent healthcare, but no response was ever given. (Complaint - Facts, ¶ 4)[2] Plaintiff also asserts that, on October 19, 2007, he filed a grievance with respect to his medical care and that the grievance was denied at Step I by defendant Stevens. (Complaint - Facts, ¶¶ 4-5) After that denial, plaintiff sent a grievance appeal to defendant Wolfenberger and it was denied at Step II by defendant Mangus. (Complaint - Facts, ¶ 6) Plaintiff then sent a grievance appeal to defendant Caruso, the MDOC

[2]Plaintiff also attached that letter as part of Exhibit A to his Complaint.

Director, and it was denied at Step III by defendant Armstrong.  (Complaint - Facts, ¶¶ 8, 11)[3]
According to plaintiff, on October 29, 2007, he was examined by defendant Finan, a medical
doctor, but Finan only (1) prescribed him Motrin and Zantac for the pain, and (2) encouraged
him to flex and extend the left knee.  (Complaint - Facts, ¶ 6)  Plaintiff also alleges that his
condition continued to worsen over the next five months.  (Complaint - Facts, ¶¶ 6-10)

As stated in the complaint, on April 7, 2008, defendant Finan discussed the possibility of
surgery or an MRI with plaintiff, but nothing was done.  (Complaint - Facts, ¶ 10)  Plaintiff
further alleges that, on May 13, 2008 he was seen by defendant Almasi, a medical doctor, and
Almasi noted plaintiff's pain, muscle atrophy and loss of movement.  (Complaint - Facts, ¶ 12)
Almasi also ordered more pain medication, a second x-ray, and more exercise.  (Complaint -
Facts, ¶ 12)  Almasi further noted that he would also consider an MRI at a later time.
(Complaint - Facts, ¶ 12)  Plaintiff asserts that he underwent the second x-ray and that results of
that procedure showed "[m]ild degenerative changes and postoperative degenerative changes."
(Complaint - Facts, ¶ 13)  Plaintiff also asserts that, on June 4, 2008, defendant Finan denied
plaintiff's request for bottom bunk detail while stating that "[w]e are not going to help you."
(Complaint - Facts, ¶ 13)  Plaintiff was also reportedly denied a bottom bunk detail on later
occasions because of Finan's initial decision.  (Complaint - Facts, ¶ 25)

Plaintiff alleges that, on July 6, 2008, a blood clot formed in his left knee and that he was
examined the next day by defendant Noronha, a medical doctor.  (Complaint - Facts, ¶¶ 14-15)

_____

[3]Plaintiff also attached the documents relating to that grievance as Exhibit B to his
complaint.

-4-

Noronha requested that an MRI be taken within one month and defendant Squier and Walker approved the request. (Complaint - Facts, ¶ 15) The MRI subsequently showed (1) a "[t]ear of the ACL graft with retraction of the inferior tibial portion of the graft which is flipped anteriorly in the region of Hoffa's fat pad" and (2) "[s]mall tears of anterior and posterior horn of the medical menicus and posterior horn of lateral menicus." (Complaint - Facts, ¶ 16)[4] According to plaintiff, on September 3, 2008, Noronha also submitted a request to Squier and Walker for plaintiff to see an orthopedic surgeon, but the request was denied on the basis that:

> Criteria was not met. Not authorized since meniscal tears are small and ACL tear should not in itself be disabling, please consider increasing intensity and frequency of his knee strengthening exercises. He should avoid playing sports that require rapid direction shifts.

[Complaint - Facts, ¶ 17][5]

On September 18, 2008, plaintiff allegedly submitted a request to see his MRI results and inquire about surgery, but that request was denied by defendant Catchings on the basis that plaintiff had an offsite appointment coming up. (Complaint - Facts, ¶ 18) On October 27, 2008, plaintiff allegedly was seen by Noronha and Noronha explained the MRI results and the consultation denial, while also noting plaintiff's chronic knee pain. (Complaint - Facts, ¶ 19)

According to plaintiff, on November 4, 2008, defendant Pandya, the Regional Medical Officer for the MDOC, indicated in a report that she agreed with the decision to deny the

---

[4]Plaintiff also attached the MRI report as Exhibit C to his Complaint.

[5]Plaintiff also attached the written decision denying the consultation as Exhibit D to his Complaint.

consultation with a orthopedic surgeon.  (Complaint - Facts, ¶ 19)[6]  Plaintiff also notes in his complaint that defendants Pramstaller, Hutchinson and Stieve are part of a committee that gives orders to defendant Pandya.  (Complaint - Facts, ¶ 19)

Plaintiff alleges that, on November 21, 2008, he was seen by defendant Geml, a physician's assistant, and that plaintiff informed Geml about the problems plaintiff was having with his medications and about the excessive pain plaintiff was experiencing.  (Complaint - Facts, ¶ 20)

Plaintiff also alleges that, on January 6, 2009, a Health Unit Manager informed plaintiff that the Manager had spoken with defendant Wolfenberger about plaintiff's complaints and that Wolfenberger told the Manager to tell plaintiff to file a grievance.  (Complaint - Facts, ¶ 21)  On January 16, 2009, plaintiff submitted another grievance.  (Complaint - Facts, ¶ 22)  The grievance was denied at Step I as "untimely" by defendant Taylor, with defendant Stephenson also signing the rejection.  (Complaint - Facts, ¶ 23)  The grievance was also denied at Step II by defendant Aiken and at Step III by defendant Armstrong.  (Complaint - Facts, ¶ 23)[7]

Plaintiff further alleges that, on May 20, 2009, after PHS took over MDOC healthcare from CMS, a Dr. Piper submitted a request for an orthopedic evaluation of plaintiff.  (Complaint - Facts, ¶ 27)  According to plaintiff, that request was denied by defendant Squiers on the basis that recent research shows that the outcomes of physical therapy and exercise for meniscus tears

---

[6]Plaintiff also attached Pandya's written decision as Exhibit E to his Complaint.

[7]Plaintiff also attached the documents relating to that grievance as Exhibit F to his Complaint.

equal that of surgery.  (Complaint - Facts, ¶ 27)  Plaintiff also claims that the decision to deny

him an evaluation was later upheld by defendant Edelman on the basis that conservative

treatment is appropriate for ACL and meniscus tears.  (Complaint - Facts, ¶ 28)[8]

According to plaintiff, he was issued an ACL brace on June 25, 2009, but the brace

caused him extreme pain.  (Complaint - Facts, ¶ 29)  Plaintiff allegedly complained about the

brace and, on July 30, 2009, plaintiff was provided with a neoprene knee sleeve to be worn with

the ACL brace as an experiment to relieve any pain the brace causes.  (Complaint - Facts, ¶ 30)

As relief, plaintiff seeks  "immediate preliminary injunction for orthoscopic evaluation &

[sic] corrective surgery, and for a permanent bottom bunk detail to prevent further knee injury

and permanent damage."  (Complaint, p. 3)  Plaintiff also seeks an award of costs, compensatory

damages in the amount of $15,000 per defendant, and punitive damages in the amount of $5,000

per defendant.  (Complaint, p. 3)  Plaintiff further seeks a declaration that the acts and omissions

described above violated his rights under the Constitution and laws of the United States of

America.  (Complaint, p. 3)

**B. Motions Before the Court**

**1. D/E #42**

---

[8]Plaintiff also attached Squier and Edelman's written decision as Exhibit G to his
Complaint.

On February 23, 2010, defendants CMS, Squier, Walker, Hutchinson, Noronha, Geml, and Almasi filed a motion to dismiss pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6) (D/E #42). In that motion, those defendants argue that plaintiff failed to exhaust his administrative remedies with respect to his claims against them prior to bringing this suit and that, consequently, his claims are barred. Defendants also argue that the claims against them should be dismissed because plaintiff failed to state any claims upon which relief can be granted.

On March 22, 2010, plaintiff filed a response to defendants' motion to dismiss (D/E #66). In that response, plaintiff argues that he timely exhausted all of the administrative remedies that were made available, his grievance was rejected on its merits, and that it was made with respect to all defendants. Plaintiff also argues that he stated claims upon which relief can be granted by alleging that CMS had a policy of denying proper healthcare in order to pocket money, and by alleging that his serious medical needs were ignored by CMS employees interested in avoiding proper treatment because CMS' contract with the MDOC was up.

On March 31, 2010, defendants filed a reply to plaintiff's response (D/E #68). In that reply, defendants reiterated their earlier arguments that plaintiff failed to properly exhaust his administrative remedies and that plaintiff failed to state a claim upon which relief can be granted.

**2. D/E #44**

On February 26, 2010, defendants PHS, Squier and Edelman filed a motion to dismiss (D/E #44). In that motion, those three defendants argue that plaintiff's claims against them should be dismissed because plaintiff failed to state a claim upon which relief can be granted.

On March 22, 2010, plaintiff filed a response to defendants' motion to dismiss (D/E #64). In that response, plaintiff relies on his response to defendants CMS, Squier, Walker, Hutchinson, Noronha, Geml, and Almasi's motion to dismiss.

On April 5, 2010, defendants filed a reply to plaintiff's response (D/E #69). In that reply, defendants argue that plaintiff failed to allege any relevant policy or practice of PHS in his complaint or response, and that, even if they erred in exercising their medical judgment, Squier and Edelman were clearly not deliberately indifferent to plaintiff's medical needs.

## III. Discussion

### A. Exhaustion of Administrative Remedies

Defendants CMS, Squier, Walker, Hutchinson, Noronha, Geml, and Almasi argue that the claims against them should be dismissed pursuant to 42 U.S.C. § 1997e(a) because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock,

549 U.S. 199, 202-204, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501-503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute." Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

In this case, the administrative procedure applicable to the plaintiff's claims are set forth in MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances." (MDOC PD 03.02.130; attached as Exhibit A to D/E #42) Pursuant to that policy directive, the MDOC grievance process consists of three steps. First, the inmate must file a Step I grievance filing setting forth the issue being grieved and identifying the persons involved in the issue after an unsuccessful attempt at a verbal resolution. If the inmate is dissatisfied with the Step I response to his grievance, he may file a Step II appeal, which is followed by a Step III grievance appeal in the event he is dissatisfied with the Step II grievance response. (MDOC PD 03.02.130, ¶¶ P, R, V, BB; attached as Exhibit A to D/E #42) That policy directive also provides that, when filing a

grievance or grievance appeal, an inmate must state the facts involved with the issue being grieved and must also include the dates, times, places, and names of all those involved in the issue being grieved.  (MDOC PD 03.02.130, ¶ R; attached as Exhibit A to D/E #42)

All grievances pursued through all three steps of the MDOC grievance process are logged in a computerized grievance tracking system.  (MDOC PD 03.02.130, ¶ GG; attached as Exhibit A to D/E #42)  However, in this case, defendants did not provide the records relating to grievances filed by plaintiff and, instead, defendants merely assert without support that plaintiff only completed three grievances during the relevant time period.  Nevertheless, plaintiff does not dispute that the three grievances identified by defendants are the only potentially relevant grievances he completed through all three steps of the grievance process and this court will treat them as such.  In fact, plaintiff attached two of those grievances as exhibits to his complaint. (Complaint, Exhibits B and F)

The first grievance identified by defendants is grievance MRF-2007-10-00990-12d3.[9]  In that grievance, filed on October 16, 2007, plaintiff alleges that he injured his left knee on September 24, 2007 and that he has been given inadequate medical care since his injury. Plaintiff also specifically noted that he had requested a consultation with a knee specialist. Among the people identified in the grievance as having denied plaintiff medical care were defendants Caruso and Pramstaller.  Plaintiff also named Governor Jennifer Granholm, Regional

_____

[9]The documents relating to Grievance MRF-2007-10-00990-12d3 are attached as Exhibit B to the Complaint and Exhibit C to D/E #42.

Health Administrator Barbara Hlacki, Dr. Gregory Naylor, and "all health care staff" at MRF in the grievance.

Grievance MRF-2007-10-00990-12d3 was denied at Step I by defendants Stevens and Skutt. In that response, those defendants advised plaintiff that their investigation revealed:

> You were evaluated by the RN 9-24-07 after your injury. You were evaluated and given ice, crutches and pain medication by the RN. You had an x-ray on 9-27–07 which showed no acute process such as fracture or dislocation. You were not given a meals [sic] in detail as you were given crutches to assist in ambulation around the unit and to chow hall. You have a follow up appointment scheduled for evaluation. If a referral to an orthopedic specialist is required a consult will be written by the medical provider.

Following that investigation, defendants Stevens and Skutt denied plaintiff's grievance on the basis that he had not been denied medical treatment.

Plaintiff appealed that Step I denial on October 30, 2007, but his appeal was denied by defendant Mangus on January 10, 2008. According to defendant Mangus, his investigation revealed that plaintiff's knee was receiving treatment. Mangus also encouraged plaintiff to access health care through the kite process if plaintiff had any current health care concerns. Plaintiff also appealed grievance MRF-2007-10-00990-12d3 to Step III, but that appeal was denied on April 30, 2008, after defendant Armstrong approved the decision. The Step III appeal was denied because "[t]he step I and step II responses appropriately addressed the grievance."

The second grievance identified by defendants is grievance MRF-2008-05-00520-12de. (Grievance MRF-2008-05-00520-12de; attached as part of Exhibit D to D/E #42) In that grievance, filed on May 28, 2008, plaintiff complained about the lack of medical treatment for

sores on his body. (Grievance MRF-2008-05-00520-12de; attached as part of Exhibit D to D/E #42) Grievance MRF-2008-05-00520-12de was denied at all three steps of the MDOC grievance process. (Grievance Responses; attached as part of Exhibit D to D/E #42)

The third grievance identified by defendants is grievance MRF-2009-01-00057-28e.[10] In that grievance, filed on January 12, 2009, plaintiff complained of a deliberately indifferent failure to treat his left knee. Plaintiff also named a number of the defendant specifically and he stated that they were violating his constitutional rights.

Grievance MRF-2009-01-00057-28e was rejected by defendant Taylor at Step I as untimely. Plaintiff appealed and his Step II appeal was also rejected by defendant Aiken. As stated by defendant Aiken, grievance MRF-2009-01-00057-28e was rejected because the issue had already been addressed in grievance MRF-2007-10-00990-12d3. Plaintiff appealed that denial to Step III, but the appeal was denied by defendant Armstrong on the basis that the grievance, while timely, was duplicative of MRF-2007-10-00990-12d3.

Given the grievances and responses described above, this court finds that plaintiff properly exhausted his administrative remedies prior to filing this lawsuit. The allegations in plaintiff's complaint arise from the medical treatment of his left knee and plaintiff previously raised allegations concerning that medical care in grievance MRF-2007-10-00990-12d3. Plaintiff also properly completed the MDOC grievance process with respect to that grievance and, by doing so, plaintiff should be found to have fully exhausted the claims in his complaint.

---

[10]The documents relating to Grievance MRF-2009-01-00057-28e are attached as Exhibit F to the Complaint and Exhibit E to D/E #42 .

Such a finding would be consistent with the goals of the exhaustion requirement as the Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones, 127 S.Ct. at 923.

Defendants Squier, Walker, Hutchinson, Noronha, Geml and Hutchinson argue that plaintiff's claims against them were not exhausted through grievance MRF-2007-10-00990-12d3 because they were not named in that grievance and because it was filed prior to any alleged involvement by them. However, the claims against defendants were clearly included in the decision, on the merits, to deny grievance MRF-2007-10-00990-12d3. The grievance responses to MRF-2007-10-00990-12d3 considered the entire course of the treatment for plaintiff's left knee, including the most recent treatment that defendants were clearly alleged to have been part of, as well as the entirety of plaintiff's complaints concerning that treatment. Moreover, the fact that the decision on grievance MRF-2007-10-00990-12d3 included a decision on the claims against defendants is also reflected in the MDOC's treatment of subsequent grievances. When plaintiff filed a grievance specifically naming the above defendants and outlining his complaints against them, it was denied as duplicative of the issues raised in grievance MRF-2007-10-00990-12d3. Thus, the MDOC clearly believed that the scope of the decision on grievance MRF-2007-10-00990-12d3 included all of plaintiff's complaints arising from the treatment of his left knee.

To the extent defendants argue that the grievance procedure failed to provide them with notice of plaintiff's claim, the Sixth Circuit has noted that, while the grievance procedure may promote early notice to those who might later be sued, that has not been thought to be one of the leading purposes of the exhaustion requirement. Jones, 127 S.Ct. at 923, citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation"). The leading purposes of the exhaustion requirement have been met in this case given that prison officials were alerted to plaintiff's complaints, the MDOC addressed all of plaintiff's allegations on their merits, and this litigation was improved by the preparation of useful record. Therefore, while plaintiff may not have specifically named all of the defendants or described all of his specific claims in the initial grievance, it was considered on the merits and this court finds that plaintiff properly exhausted his administrative remedies prior to filing this lawsuit.

## B. Failure to State a Claim Upon Which Relief Can Be Granted

### 1. Standard of Review

Defendants all move to dismiss plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or

"a formulaic recitation of the elements of a cause of action ..."  Bell Atlantic Corp. v. Twombly, 550 U.S. 555, 570, 127 S.Ct. 1955, 1964-65, 1974, 167 L.Ed.2d 929 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court most recently provided, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 U.S. at 1949 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 U.S. at 1949 (citing Twombly, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  Iqbal, 129 U.S. at 1949.  See also Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  This presumption, however, is not applicable to legal conclusions.  Iqbal, 129 S.Ct. at 1949.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 U.S. at 1949 (citing Twombly, 550 U.S. at 555).

This court would also note that plaintiff references and attaches a number of exhibits to his complaint. A court's consideration of documents that are central to the plaintiff's claims and to which the complaint refers and incorporates as exhibits is proper when assessing a Rule 12(b)(6) motion. <u>Amini v. Oberlin College</u>, 259 F.3d 493, 502 (6th Cir. 2001).

### 2. Analysis

Defendants argue that plaintiff has failed to state a violation of the Eighth Amendment, as incorporated against the state of Michigan by the Fourteenth Amendment. Elementary principles concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the government's obligation to provide medical care for those whom it is punishing by incarceration. <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. <u>See</u> <u>Estelle</u>, 429 U.S. at 103-104. To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. <u>Wilson</u>, 501 U.S. at 300.

### a. Claims Against Corporate Defendants

Defendants CMS and PHS argue that plaintiff failed to state a claim against them upon which relief can be granted because plaintiff failed to allege any of the requisite elements for liability of a private corporation under 42 U.S.C. § 1983.

Corporations, whether public or private, cannot be held liable under § 1983 on a respondeat superior or vicarious liability basis. Street v. Corr. Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996); see also Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir. 1999) ("Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act....  Liability under this theory must be based upon more than a mere right to control employees and cannot be based upon simple negligence.").  Therefore, to establish § 1983 liability, plaintiff must show that CMS or PHS implemented a policy, custom, or practice that caused a deprivation of the plaintiff's Eighth Amendment rights.  Garner v. Memphis Police Dep't, 8 F.3d 358, 363-64 (6th Cir. 1993); Starcher v. Corr. Med. Sys., Inc., 7 Fed. Appx. 459, 465 (6th Cir. 2001).  Specifically, a plaintiff must identify the policy, connect the policy to the defendant and show that the particular injury was caused because of the execution of that policy. Garner, 8 F.3d at 363-364.

Here, plaintiff does not allege or identify any specific policy or procedure implemented by CMS or PHS that caused a deprivation of plaintiff's constitutional rights.  Consequently, plaintiff's claims against CMS and PHS should be dismissed for failure to state claims upon which relief can be granted.[11]

---

[11]Plaintiff does asserts in his response that CMS had a policy of denying treatment in order to maximize profits, but there is no such allegation in his complaint and, even if there was, there are no factual allegations in the complaint rendering such a claim sufficiently plausible to survive a motion to dismiss.

**b. Claims Against Individual Defendants**

Defendants Squier, Walker, Hutchinson, Noronha, Geml, Almasi and Edelman argue that the claims against them should be dismissed because plaintiff failed to state a claim upon which relief can be granted.  As argued by those defendants, plaintiff's claim is insufficient with respect to both the objective element and the subjective element of plaintiff's Eighth Amendment claim.

As discussed above, to succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one.  Wilson, 501 U.S. at 300.  The objective element is satisfied by a showing that plaintiff had a serious medical need.  Wilson, 501 U.S. at 297.  "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test."  Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004).  However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'"  Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).

Here, plaintiff has stated a claim upon which relief can be granted with respect to the objective element of his claim.  Plaintiff alleges that he suffered a left knee injury and that he is in great pain.  Plaintiff also alleged that his need for medical care was obvious and that he was actually receiving such care.  In addition to the treatment described by plaintiff in his complaint,

plaintiff also alleged that a number of medical doctors were recommending that he be evaluated

by an orthopedic surgeon.  Given those allegations regarding the recommendations, the treatment

and the injury, plaintiff's complaint is sufficient with respect to the objective component of his

claim.

With the respect to the subjective element of plaintiff's claim, the plaintiff must

demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it" in

order to satisfy the subjective element of the adequate medical care test  Comstock v. McCrary,

273 F.3d 693, 703 (6th Cir. 2001).  Deliberate indifference is characterized by obduracy and

wantonness, not inadvertence or good faith error.  Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir.

1992).  Moreover, where the prisoner has received some medical attention and the dispute is

over the adequacy of the treatment, courts are reluctant to second guess medical judgments,

Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not

include negligence in diagnosing a medical condition.  Sanderfer v. Nichols, 62 F.3d 151, 154

(6th Cir. 1995) (citations omitted).  However, it is not necessary for a plaintiff to "show that the

official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"

Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.  Put simply, "deliberate

indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly

disregarding that risk."  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

In this case, plaintiff's complaint alleges that defendants were deliberately indifferent in

the treatment of his left knee injury.  However, plaintiff's complaint and his exhibits to that

complaint[12] also provide that plaintiff was repeatedly treated by medical personnel with respect to that knee. As described above, plaintiff's complaint and the exhibits to that complaint expressly provide that plaintiff was examined and treated by medical personnel on numerous occasions following a left knee injury on September 24, 2007. (Complaint - Facts, ¶¶ 1, 3, 12, 14-15, 19-20, 29-30; Exhibits B-G) Moreover, plaintiff described the specific tests he underwent. According to plaintiff's complaint, his left knee was x-rayed on September 27, 2007 and the x-ray findings provided "[t]he left knee is examined in three projections and demonstrates old orthopedic surgical hardware. No acute process is seen such as fracture or dislocation." (Complaint - Facts, ¶ 3) Plaintiff also alleges that he underwent a second x-ray and that results of the procedure showed "[m]ild degenerative changes and postoperative degenerative changes." (Complaint - Facts, ¶ 13) Plaintiff further alleges that an MRI in August of 2008 showed (1) a "[t]ear of the ACL graft with retraction of the inferior tibial portion of the graft which is flipped anteriorly in the region of Hoffa's fat pad" and (2) "[s]mall tears of anterior and posterior horn of the medical menicus and posterior horn of lateral menicus." (Complaint - Facts, ¶ 16; Exhibit C) The MRI report also demonstrates that its findings were related to a prior surgery. (Complaint, Exhibit C)

 Plaintiff does allege in his complaint that he should have been evaluated by an orthopedic surgeon and that several doctors recommended such an evaluation. (Complaint - Facts, ¶¶ 10, 17) However, plaintiff's complaint and exhibits also provide the reasons why plaintiff never

---

 [12]A court's consideration of documents that are central to the plaintiff's claims and to which the complaint refers and incorporates as exhibits is proper when assessing a Rule 12(b)(6) motion. <u>Amini v. Oberlin College</u>, 259 F.3d 493, 502 (6th Cir. 2001).

underwent such an evaluation.  According to plaintiff, Squier and Walker initially denied the

request on the basis that:

> Criteria was not met.  Not authorized since meniscal tears are
> small and ACL tear should not in itself be disabling, please
> consider increasing intensity and frequency of his knee
> strengthening exercises.  He should avoid playing sports that
> require rapid direction shifts.

[Complaint - Facts, ¶ 17; Exhibit D]  Plaintiff's complaint also demonstrates that defendant

Pandya  indicated in a report that she agreed with the decision to deny the consultation with a

orthopedic surgeon.  (Complaint - Facts, ¶ 19; Exhibit E)  Furthermore, a later request for an

evaluation by an orthopedic surgeon was denied by defendant Squiers on the basis that recent

research showed that the outcomes of physical therapy and exercise for meniscus tears equal that

of surgery.  (Complaint - Facts, ¶ 27; Exhibit G) That decision was later upheld by defendant

Edelman on the basis that conservative treatment is appropriate for ACL and meniscus tears.

(Complaint - Facts, ¶ 28; Exhibit G)

    Plaintiff's essential disagreement is over the treatment he received and that dispute is

insufficient to establish a violation of the Eighth Amendment.  As discussed above, "[w]here a

prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims that sound in state tort law."  Graham ex rel. Estate of Graham v. County

of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004) (quoting Westlake, 537 F.2d at 860 n. 5).  See

also Estelle v. Gamble, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that a

challenge to a doctor's medical judgment is at most a medical malpractice claim governed by

state law).  A prisoner's mere disagreement with a doctor's diagnosis or treatment does not state

an Eighth Amendment claim of deliberate indifference to a serious medical need.  <u>Mabry v.</u>

<u>Antonini</u>, 289 Fed. Appx. 895, 902 (6th Cir. 2008); <u>Dodson v. Wilkinson</u>, 304 Fed. Appx. 434,

440 (6th Cir. 2008).

Thus, plaintiff's complaint and exhibits on their face negate the subjective element

required to prove a deliberate indifference claim and, because plaintiff's allegations simply

constitute a difference of opinion between himself and medical personnel regarding his medical

treatment, he has failed to allege facts that, if proven, would rise to the level of deliberate

indifference in order to support an Eighth Amendment claim.  <u>See</u> <u>Estelle</u>, 429 U.S. at 105-06;

<u>Westlake</u>, 537 F.2d at 860 n. 5.  Therefore the claims against defendants Squier, Walker,

Hutchinson, Noronha, Geml, Almasi and Edelman should be dismissed pursuant to Fed. R. Civ.

P. 12(b)(6).

## IV. Conclusion

For the reasons discussed above, this court recommends that defendants' motions to

dismiss be **GRANTED** and that the claims against defendants PHS, Edelman, Squier, Walker,

Hutchinson, CMS, Almasi, Noronha, and Geml be dismissed pursuant to Fed. R. Civ. P. 12(6)

for a failure to state a claim upon which relief can be granted.  Additionally, this court

recommends that defendants Finan and Catchings be dismissed *sua sponte* for the same reasons

as the defendants who brought the above motions.  Those two defendants have not yet been

served, but even if they were served, plaintiff has failed to state a claim against them upon which

relief can be granted.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: May 21. 2010

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on May 21, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan
