UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CLIFTON MOFFAT,

              Plaintiff,                CIVIL ACTION NO. 09-14696

        v.                       DISTRICT JUDGE DENISE PAGE HOOD

MICHIGAN DEPARTMENT OF      MAGISTRATE JUDGE VIRGINIA M. MORGAN
CORRECTIONS, PRISON HEALTH
SERVICES, INCORPORATED, ADAM
EDELMAN, HARRIOT SQUIER, REGINA
WALKER, HARESH B. PANDYA, GEORGE
PRAMSTALLER, CRAIG HUTCHINSON,
PATRICIA CARUSO, WALTER F. FINAN,
BETHANY STEVENS, E. SKUTT, CHARLES
MANGUS, J. ARMSTRONG, E. TAYLOR, G.
STEPHENSON, SABRINA AIKEN,
CORRECTIONAL MEDICAL SERVICES,
INCORPORATED, MEHDI ALMASI, ANITA
M. NORONHE, PATRICK J. GEML, HUGH
WOLFENBERGER, JEFFREY STIEVE,
JACQUELINE D. CATCHINGS,

              Defendants.
_____/

**REPORT AND RECOMMENDATION
TO DISMISS AND/OR GRANT SUMMARY JUDGMENT TO
MDOC DEFENDANTS (D/E #45 and #56)**


**I. Introduction**

      This is a *pro se* 42 U.S.C § 1983 action in which plaintiff, an inmate in the custody of the

Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff of

his rights under the United States Constitution through their deliberate indifference to his serious medical needs. The matter comes before the court on defendants MDOC, Caruso, Stieve, Wolfenbarger, Stephenson, Taylor, Skutt, and Pramstaller's Motion for Summary Judgment (D/E #45) and defendants Pandya, Mangus, and Aiken's Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) and, alternatively, Summary Judgment Pursuant to Fed. R. Civ. P. 56 (D/E #56). Plaintiff has filed responses in opposition to both of those motions (D/E #67, #71).

For the reasons discussed below, this court recommends that defendants' motions be **GRANTED**. The claims against the MDOC and for monetary damages against the other defendants in their official capacities should be dismissed on the basis of Eleventh Amendment Immunity. The individual defendants are also entitled to summary judgment on the claims against them.

Additionally, this court recommends that defendants Stevens and Armstrong be dismissed *sua sponte*. Those two defendants have not yet been served, but even if they were served, the claims against them would fail for the same reasons discussed below with respect to the defendants bringing these motions.

This court would also note that plaintiff appeared to name the State of Michigan as a defendant in this case, but that the State of Michigan does not appear as a defendant on the docket sheet. In any event, the Eleventh Amendment to the United States Constitution bars suit against a state in federal court unless the state has given express consent, Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), overruled in part on other grounds, Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105

L.Ed.2d 45; <u>Alabama v. Pugh</u>, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), and

the State of Michigan has not consented to civil rights suits in the federal courts, <u>Abick v.</u>

<u>Michigan</u>, 803 F.2d 874, 877 (6th Cir.1986).  Plaintiff also appears to now concede that the State

of Michigan is not a proper defendant in this action (D/E #67, p. 3).

## II. Background

### A. Complaint

On December 2, 2009, plaintiff filed the complaint in this action and, in that complaint,

plaintiff alleges that defendants were deliberately indifferent to his serious medical needs while

he was an inmate at the Macomb Correctional Facility (MRF) in New Haven, Michigan (D/E

#1).  Specifically, plaintiff alleges that he suffered an injury to his left knee while playing

handball on September 24, 2007.  (Complaint - Facts, ¶ 1)  Plaintiff had previously suffered an

ACL tear in his left knee in 1991 before undergoing a full ACL reconstructions.  (Complaint -

Facts, ¶ 1)  According to plaintiff, his left knee was x-rayed on September 27, 2007 and the x-ray

findings provided "[t]he left knee is examined in three projections and demonstrates old

orthopedic surgical hardware.  No acute process is seen such as fracture or dislocation."

(Complaint - Facts, ¶ 3)  Plaintiff also alleges that he was only given a handful of Motrin and

that his pain continued to increase over the next three weeks.  (Complaint - Facts, ¶ 3)

Plaintiff asserts that, on October 10, 2007, he wrote a letter to defendant Wolfenberger,

the Warden at MRF, complaining about his excessive pain and the incompetent healthcare, but

no response was ever given.  (Complaint - Facts, ¶ 4)[1]  Plaintiff also asserts that, on October 19,

_____

[1]Plaintiff also attached that letter as part of Exhibit A to his Complaint.

2007, he filed a grievance with respect to his medical care and that the grievance was denied at Step I by defendant Stevens. (Complaint - Facts, ¶¶ 4-5) After that denial, plaintiff sent a grievance appeal to defendant Wolfenberger and it was denied at Step II by defendant Mangus. (Complaint - Facts, ¶ 6) Plaintiff then sent a grievance appeal to defendant Caruso, the MDOC Director, and it was denied at Step III by defendant Armstrong. (Complaint - Facts, ¶¶ 8, 11)[2] According to plaintiff, on October 29, 2007, he was examined by defendant Finan, a medical doctor, but Finan only (1) prescribed him Motrin and Zantac for the pain, and (2) encouraged him to flex and extend the left knee. (Complaint - Facts, ¶ 6) Plaintiff also alleges that his condition continued to worsen over the next five months. (Complaint - Facts, ¶¶ 6-10)

As stated in the complaint, on April 7, 2008, defendant Finan discussed the possibility of surgery or an MRI with plaintiff, but nothing was done. (Complaint - Facts, ¶ 10) Plaintiff further alleges that, on May 13, 2008 he was seen by defendant Almasi, a medical doctor, and Almasi noted plaintiff's pain, muscle atrophy and loss of movement. (Complaint - Facts, ¶ 12) Almasi also ordered more pain medication, a second x-ray, and more exercise. (Complaint - Facts, ¶ 12) Almasi further noted that he would also consider an MRI at a later time. (Complaint - Facts, ¶ 12) Plaintiff asserts that he underwent the second x-ray and that results of that procedure showed "[m]ild degenerative changes and postoperative degenerative changes." (Complaint - Facts, ¶ 13) Plaintiff also asserts that, on June 4, 2008, defendant Finan denied plaintiff's request for bottom bunk detail while stating that "[w]e are not going to help you."

_____

[2]Plaintiff also attached the documents relating to that grievance as Exhibit B to his complaint.

(Complaint - Facts, ¶ 13)  Plaintiff was also reportedly denied a bottom bunk detail on later occasions because of Finan's initial decision.  (Complaint - Facts, ¶ 25)

Plaintiff alleges that, on July 6, 2008, a blood clot formed in his left knee and that he was examined the next day by defendant Noronha, a medical doctor.  (Complaint - Facts, ¶¶ 14-15)  Noronha requested that an MRI be taken within one month and defendant Squier and Walker approved the request.  (Complaint - Facts, ¶ 15)  The MRI subsequently showed (1) a "[t]ear of the ACL graft with retraction of the inferior tibial portion of the graft which is flipped anteriorly in the region of Hoffa's fat pad" and (2) "[s]mall tears of anterior and posterior horn of the medical menicus and posterior horn of lateral menicus."  (Complaint - Facts, ¶ 16)[3]  According to plaintiff, on September 3, 2008, Noronha also submitted a request to Squier and Walker for plaintiff to see an orthopedic surgeon, but the request was denied on the basis that:

> Criteria was not met.  Not authorized since meniscal tears are small and ACL tear should not in itself be disabling, please consider increasing intensity and frequency of his knee strengthening exercises.  He should avoid playing sports that require rapid direction shifts.

[Complaint - Facts, ¶ 17][4]

On September 18, 2008, plaintiff allegedly submitted a request to see his MRI results and inquire about surgery, but that request was denied by defendant Catchings on the basis that plaintiff had an offsite appointment coming up.  (Complaint - Facts, ¶ 18)  On October 27, 2008,

---

[3]Plaintiff also attached the MRI report as Exhibit C to his Complaint.

[4]Plaintiff also attached the written decision denying the consultation as Exhibit D to his Complaint.

plaintiff allegedly was seen by Noronha and Noronha explained the MRI results and the consultation denial, while also noting plaintiff's chronic knee pain. (Complaint - Facts, ¶ 19)

According to plaintiff, on November 4, 2008, defendant Pandya, the Regional Medical Officer for the MDOC, indicated in a report that she agreed with the decision to deny the consultation with a orthopedic surgeon. (Complaint - Facts, ¶ 19)[5] Plaintiff also notes in his complaint that defendants Pramstaller, Hutchinson and Stieve are part of a committee that gives orders to defendant Pandya. (Complaint - Facts, ¶ 19)

Plaintiff alleges that, on November 21, 2008, he was seen by defendant Geml, a physician's assistant, and that plaintiff informed Geml about the problems plaintiff was having with his medications and about the excessive pain plaintiff was experiencing. (Complaint - Facts, ¶ 20)

Plaintiff also alleges that, on January 6, 2009, a Health Unit Manager informed plaintiff that the Manager had spoken with defendant Wolfenberger about plaintiff's complaints and that Wolfenberger told the Manager to tell plaintiff to file a grievance. (Complaint - Facts, ¶ 21) On January 16, 2009, plaintiff submitted another grievance. (Complaint - Facts, ¶ 22) The grievance was denied at Step I as "untimely" by defendant Taylor, with defendant Stephenson also signing the rejection. (Complaint - Facts, ¶ 23) The grievance was also denied at Step II by defendant Aiken and at Step III by defendant Armstrong. (Complaint - Facts, ¶ 23)[6]

---

[5]Plaintiff also attached Pandya's written decision as Exhibit E to his Complaint.

[6]Plaintiff also attached the documents relating to that grievance as Exhibit F to his Complaint.

Plaintiff further alleges that, on May 20, 2009, after PHS took over MDOC healthcare from CMS, a Dr. Piper submitted a request for an orthopedic evaluation of plaintiff. (Complaint - Facts, ¶ 27) According to plaintiff, that request was denied by defendant Squiers on the basis that recent research shows that the outcomes of physical therapy and exercise for meniscus tears equal that of surgery. (Complaint - Facts, ¶ 27) Plaintiff also claims that the decision to deny him an evaluation was later upheld by defendant Edelman on the basis that conservative treatment is appropriate for ACL and meniscus tears. (Complaint - Facts, ¶ 28)[7]

According to plaintiff, he was issued an ACL brace on June 25, 2009, but the brace caused him extreme pain. (Complaint - Facts, ¶ 29) Plaintiff allegedly complained about the brace and, on July 30, 2009, plaintiff was provided with a neoprene knee sleeve to be worn with the ACL brace as an experiment to relieve any pain the brace causes. (Complaint - Facts, ¶ 30)

As relief, plaintiff seeks "immediate preliminary injunction for orthoscopic evaluation & [sic] corrective surgery, and for a permanent bottom bunk detail to prevent further knee injury and permanent damage." (Complaint, p. 3) Plaintiff also seeks an award of costs, compensatory damages in the amount of $15,000 per defendant, and punitive damages in the amount of $5,000 per defendant. (Complaint, p. 3) Plaintiff further seeks a declaration that the acts and omissions described above violated his rights under the Constitution and laws of the United States of America. (Complaint, p. 3)

### B. Motions Before the Court

---

[7]Plaintiff also attached Squier and Edelman's written decision as Exhibit G to his Complaint.

**1. D/E #45**

On February 26, 2010, defendants MDOC, Caruso, Stieve, Wolfenbarger, Stephenson, Taylor, Skutt, and Pramstaller filed the motion for summary judgment before the court (D/E #45). In that motion, those defendants argue that plaintiff failed to exhaust his administrative remedies consistent with 42 U.S.C. § 1997e(a) with respect to defendants Stieve, Wolfenbarger, and Skutt. Defendants also argue that the MDOC and its officials acting in their official capacities, to the extent such plaintiff's claims are for monetary damages, are entitled to immunity. Defendants further argue that they are entitled to qualified immunity and summary judgment.

On March 22, 2010, plaintiff filed a response to the motion for summary judgment (D/E #67). In that response, plaintiff asserts that he named the defendants to the extent possible in his grievances and that the MDOC had notice of his complaints. Plaintiff also argues that all defendants were personally involved in the inadequate medical care and that the inadequate medical care constituted deliberate indifference to his serious medical needs. Plaintiff does acknowledge that the MDOC should be dismissed from this case.

**2. D/E #56**

On March 22, 2010, defendants Pandya, Mangus, and Aiken filed the motion to dismiss and for summary judgment before the court (D/E #56). In that motion, those defendants argue that they are entitled to immunity with respect to plaintiff's claims for monetary damages against

them in their official capacities.  Defendants also argue that they are entitled to qualified immunity and summary judgment.

On April 7, 2010, plaintiff filed a response to Pandya, Mangus and Aiken's motion (D/E #71).  In that response, plaintiff argues that those three defendants were personally involved in the constitutionally inadequate medical care.

### III. Discussion

#### A. Exhaustion of Administrative Remedies

Defendants Stieve, Wolfenberger, and Skutt argue that the claims against them should be dismissed pursuant to 42 U.S.C. § 1997e(a) because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq*., "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court.  Jones v. Bock, 549 U.S. 199, 202-204, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures,

specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501-503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute." Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

In this case, the administrative procedure applicable to the plaintiff's claims are set forth in MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances." (MDOC PD 03.02.130; attached as Exhibit D to D/E #45) Pursuant to that policy directive, the MDOC grievance process consists of three steps. First, the inmate must file a Step I grievance filing setting forth the issue being grieved and identifying the persons involved in the issue after an unsuccessful attempt at a verbal resolution. If the inmate is dissatisfied with the Step I response to his grievance, he may file a Step II appeal, which is followed by a Step III grievance appeal in the event he is dissatisfied with the Step II grievance response. (MDOC PD 03.02.130, ¶¶ P, R, V, BB; attached as Exhibit D to D/E #45) That policy directive also provides that, when filing a grievance or grievance appeal, an inmate must state the facts involved with the issue being grieved and must also include the dates, times, places, and names of all those involved in the issue being grieved. (MDOC PD 03.02.130, ¶ R; attached as Exhibit D to D/E #45)

All grievances pursued through all three steps of the MDOC grievance process are logged in a computerized grievance tracking system. (MDOC PD 03.02.130, ¶ GG; attached as

Exhibit D to D/E #45)  However, in this case, defendants did not provide the records relating to grievances filed by plaintiff and, instead, defendants merely assert without support that plaintiff only completed two relevant grievances.  Nevertheless, plaintiff does not dispute that the two grievances identified by defendants are the only potentially relevant grievances he completed through all three steps of the grievance process and this court will treat them as such.  In fact, plaintiff attached those two grievances as exhibits to his complaint.  (Complaint, Exhibits B and F)

The first grievance identified by defendants is grievance MRF-2007-10-00990-12d3.[8]  In that grievance, filed on October 16, 2007, plaintiff alleges that he injured his left knee on September 24, 2007 and that he has been given inadequate medical care since his injury. Plaintiff also specifically noted that he had requested a consultation with a knee specialist. Among the people identified in the grievance as having denied plaintiff medical care were defendants Caruso and Pramstaller.  Plaintiff also named Governor Jennifer Granholm, Regional Health Administrator Barbara Hlacki, Dr. Gregory Naylor, and "all health care staff" at MRF in the grievance.

Grievance MRF-2007-10-00990-12d3 was denied at Step I by defendants Stevens and Skutt.  In that response, those defendants advised plaintiff that their investigation revealed:

> You were evaluated by the RN 9-24-07 after your injury.  You were evaluated and given ice, crutches and pain medication by the RN.  You had an x-ray on 9-27–07 which showed no acute process such as fracture or dislocation.  You were not given a meals [sic]

---

[8]The documents relating to Grievance MRF-2007-10-00990-12d3 are attached as Exhibit B to the Complaint and Exhibit B to D/E #45.

> in detail as you were given crutches to assist in ambulation around
> the unit and to chow hall. You have a follow up appointment
> scheduled for evaluation. If a referral to an orthopedic specialist is
> required a consult will be written by the medical provider.

Following that investigation, defendants Stevens and Skutt denied plaintiff's grievance on the

basis that he had not been denied medical treatment.

Plaintiff appealed that Step I denial on October 30, 2007, but his appeal was denied by

defendant Mangus on January 10, 2008. According to defendant Mangus, his investigation

revealed that plaintiff's knee was receiving treatment. Mangus also encouraged plaintiff to

access health care through the kite process if plaintiff had any current health care concerns.

Plaintiff also appealed grievance MRF-2007-10-00990-12d3 to Step III, but that appeal was

denied on April 30, 2008, after defendant Armstrong approved the decision. The Step III appeal

was denied because "[t]he step I and step II responses appropriately addressed the grievance."

The second grievance identified by defendants is grievance MRF-2009-01-00057-28e.[9]

In that grievance, filed on January 12, 2009, plaintiff complained of a deliberately indifferent

failure to treat his left knee. Plaintiff also named a number of the defendant specifically and he

stated that they were violating his constitutional rights.

Grievance MRF-2009-01-00057-28e was rejected by defendant Taylor at Step I as

untimely. Plaintiff appealed and his Step II appeal was also rejected by defendant Aiken. As

stated by defendant Aiken, grievance MRF-2009-01-00057-28e was rejected because the issue

---

[9]The documents relating to Grievance MRF-2009-01-00057-28e are attached as Exhibit F
to the Complaint and Exhibit C to D/E #45.

had already been addressed in grievance MRF-2007-10-00990-12d3.  Plaintiff appealed that denial to Step III, but the appeal was denied by defendant Armstrong on the basis that the grievance, while timely, was duplicative of MRF-2007-10-00990-12d3.

Given the grievances and responses described above, this court finds that plaintiff properly exhausted his administrative remedies with respect to defendants Stieve, Wolfenberger, and Skutt prior to filing this lawsuit.  The allegations in plaintiff's complaint arise from the medical treatment of his left knee and plaintiff previously raised allegations concerning that medical care in grievance MRF-2007-10-00990-12d3.  Plaintiff also properly completed the MDOC grievance process with respect to that grievance and, by doing so, plaintiff should be found to have fully exhausted the claims in his complaint.  Such a finding would be consistent with the goals of the exhaustion requirement as the Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  Jones, 127 S.Ct. at 923.

Defendants Stieve, Wolfenberger, and Skutt argue that plaintiff's claims against them were not exhausted through grievance MRF-2007-10-00990-12d3 because they were not named in that grievance.  However, the claims against defendants were clearly included in the decision, on the merits, to deny grievance MRF-2007-10-00990-12d3.  The grievance responses to MRF-2007-10-00990-12d3 considered the entire course of the treatment for plaintiff's left knee as well as the entirety of plaintiff's complaints concerning that treatment.  Moreover, the fact

that the decision on grievance MRF-2007-10-00990-12d3 included a decision on the claims against defendants is also reflected in the MDOC's treatment of subsequent grievances. When plaintiff filed a grievance specifically naming more defendants and outlining his complaints against them, it was denied as duplicative of the issues raised in grievance MRF-2007-10-00990-12d3. Thus, the MDOC clearly believed that the scope of the decision on grievance MRF-2007-10-00990-12d3 included all of plaintiff's complaints arising from the treatment of his left knee.

To the extent defendants argue that the grievance procedure failed to provide them with notice of plaintiff's claim, the Sixth Circuit has noted that, while the grievance procedure may promote early notice to those who might later be sued, that has not been thought to be one of the leading purposes of the exhaustion requirement. Jones, 127 S.Ct. at 923, citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation"). The leading purposes of the exhaustion requirement have been met in this case given that prison officials were alerted to plaintiff's complaints, the MDOC addressed all of plaintiff's allegations on their merits, and this litigation was improved by the preparation of useful record. Therefore, while plaintiff may not have specifically named defendants Stieve, Wolfenberger, and Skutt in the initial grievance, it was considered on the merits and this court finds that plaintiff properly exhausted his administrative remedies prior to filing this lawsuit.

**B. Failure to State a Claim Upon Which Relief Can Be Granted**

**1. Standard of Review**

Defendants all move to dismiss plaintiff's claims against the MDOC and the individual defendants in their official capacities, to the extent plaintiff seeks monetary damages, pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..." Bell Atlantic Corp. v. Twombly, 550 U.S. 555, 570, 127 S.Ct. 1955, 1964-65, 1974, 167 L.Ed.2d 929 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court most recently provided, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 U.S. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 U.S. at 1949 (citing Twombly, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of illegal [conduct]." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. Iqbal, 129 U.S. at 1949. See also Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). This presumption, however, is not applicable to legal conclusions. Iqbal, 129 S.Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 U.S. at 1949 (citing Twombly, 550 U.S. at 555).

### 2. Analysis

Defendants argue that plaintiff has failed to state a claim against the MDOC or for monetary damages against the individual defendants in their official capacities because of defendants' immunity under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State.

[U.S. Const. amend. XI.] "'It is … well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]' if the suit is somehow deemed to be against the State." Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

**a. MDOC**

As argued by defendants and conceded by plaintiff, the Eleventh Amendment bars suit against state agencies such as the MDOC unless the state has given express consent, regardless of the relief sought.  Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), overruled in part on other grounds, Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45; Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).  The State of Michigan has not consented to civil rights suits in the federal courts, see Abick v. Michigan, 803 F.2d 874, 877 (6th Cir.1986), and, consequently, the claims against the MDOC should be dismissed.

**b. Individual Defendants in their Official Capacities**

"Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief'."  Doe, 21 F.3d at 736.  Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737.  Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants.  Doe, 21 F.3d at 737.

Thus, the Eleventh Amendment is a bar to claims for past damages against state defendants sued in their official capacities, but it does not bar prospective relief (injunctive or declaratory) against those defendants.  Rossborough Mfg. Co. v. Trimble, 301 F.3d 482, 489 (6th Cir. 2002); Wolfel v. Morris, 972 F.2d 712, 719 (6th Cir.1992); see Will v. Mich. Dep't of State

Police, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Nor does the Eleventh Amendment bar suits for damages against state officials sued in their individual capacities. Hafer v. Melo, 502 U.S. 21, 30-31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Moreover, qualified immunity protects officials from liability only in their individual capacities and only from damages-not from declaratory or injunctive relief. Flagner v. Wilkinson, 241 F.3d 475, 483 (6th Cir. 2001); Littlejohn v. Rose, 768 F.2d 765, 772 (6th Cir. 1985).

Applying the above rules to the present case, the only claims plaintiffs can bring are claims for declaratory or injunctive relief against defendants in their official or individual capacities, and claims for damages against defendants in their individual capacities. See, *e.g.*, George-Khouri Family Ltd. Partnership v. Ohio Dept. of Liquor Control, No. 04-3782, 2005 WL 1285677, *3 (6th Cir. 2005) (allowing claims for declaratory or injunctive relief against all of the defendants in both capacities, but limiting the additional claims for damages to the defendants also sued in their individual capacities). Therefore, defendants' motions should be granted on this issue.

**C. Summary Judgment**

**1. Standard of Review**

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary

judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

### 2. Analysis

Defendants argue that they are entitled to summary judgment on plaintiff's claims for violation of the Eighth Amendment, as incorporated against the state of Michigan by the

Fourteenth Amendment. Elementary principles concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the government's obligation to provide medical care for those whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 102-103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. See Estelle, 429 U.S. at 103-104. To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. Wilson, 501 U.S. at 300.

### a. Lack of Personal Involvement

Defendants Caruso, Taylor, Stephenson, Skutt, Wolfenberger, Stieve, Pramstaller, Pandya, Mangus, and Aiken first argue that they are entitled to summary judgment because they were not personally involved in plaintiff's medical treatment. To succeed in under § 1983 , a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983. See Turner v. City of Taylor, 412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.

At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted). Moreover, the Sixth Circuit held in <u>Shehee</u> that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983. <u>Shehee</u>, 199 F.3d at 300.

Here, beyond being named in the complaint and identified as supervisors, defendants Caruso, Wolfenberger, Pramstaller, Stieve are not alleged to have been personally involved in plaintiff's medical treatment and their affidavits, expressly provide that they were not personally involved. (Affidavits; attached as Exhibits E, I, J, K to D/E #45 and Exhibit N to D/E #56) Similarly, defendants Skutt, Mangus, Taylor, Stephenson, and Aiken are only alleged to have denied plaintiff's grievances and their affidavits also expressly provide that they were not personally involved in plaintiff's medical treatment. (Affidavits; attached as Exhibits F, G, H to D/E #45 and Exhibit M to D/E #56) Plaintiff has not provided any evidence contradicting those affidavits.

As discussed above, a respondeat superior theory of liability or a theory of liability based on the denial of an administrative grievance or the failure to remedy the alleged constitutional violation is not cognizable under 42 U.S.C. § 1983, and a plaintiff must show, at the minimum, that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. <u>Turner</u>, 412 F.3d at 649; <u>Shehee</u>, 199 F.3d at 300. Plaintiff relies solely on such improper theories of liability in his claims against defendants

Caruso, Taylor, Stephenson, Skutt, Wolfenberger, Stieve, Pramstaller, Mangus, and Aiken and

no genuine issue of material fact exists regarding whether those defendants were personally

involved in the alleged constitutional violations. Consequently, defendants Caruso, Taylor,

Stephenson, Skutt, Wolfenberger, Stieve, Pramstaller, Mangus, and Aiken are entitled to

judgment as a matter of law and should be granted summary judgment due to their lack of

personal involvement.[10]

Defendant Pandya, on the other hand, is alleged to have been both a supervisor and have

directly participated in plaintiff's medical treatment by denying his request for evaluation by an

orthopedic surgeon. Moreover, Pandya's affidavit acknowledges that involvement. (Affidavit of

Haresh B. Pandya, M.D., ¶ 6; attached as Exhibit O to D/E #56) Therefore, she is not entitled to

summary judgment on the basis that no genuine issue of material fact exists as to her personal

involvement in the alleged constitutional violation.

**b. Deliberate Indifference**

Defendants also argue that they are entitled to summary judgment because no genuine

issue of material fact exists with respect to the subjective component of plaintiff's claims. With

the respect to the subjective element of plaintiff's claim, the plaintiff must demonstrate that the

defendant "subjectively perceived a risk of harm and then disregarded it" in order to satisfy the

subjective element of the adequate medical care test  Comstock v. McCrary, 273 F.3d 693, 703

(6th Cir. 2001). Deliberate indifference is characterized by obduracy and wantonness, not

---

[10]This court would note that defendants Stevens and Armstrong, while not served, are
also only alleged to have responded to plaintiff's grievances and they were not personally
involved in the alleged constitutional violation.

inadvertence or good faith error. Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition. Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted). However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835. Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

In this case, plaintiff's complaint alleges that defendants were deliberately indifferent in the treatment of his left knee injury. However, plaintiff's complaint, the exhibits to that complaint, and the evidence provided by defendants all provide that plaintiff was repeatedly treated by medical personnel with respect to that knee. Plaintiff was examined, including undergoing x-rays and an MRI, and treated by medical personnel on numerous occasions following his left knee injury on September 24, 2007. (Complaint - Facts, ¶¶ 1, 3, 12-16, 19-20, 29-30; Complaint, Exhibits B-G; Medical Records, pp. 16-17, 24-25, 100, 121, 89, 147, attached as part of Exhibit A to D/E #45) As part of his treatment, plaintiff was given ice and crutches on the day of his injury (Medical Records, p. 147), early chow detail for two months starting November 9, 2007 (Medical Records, p. 131), pain relievers (Medical Records, p. 121),

directions on special exercises (Medical Records, p. 121) an ACL brace (Medical Records, p. 49) and a knee sleeve to wear in conjunction with the ACL brace (Medical Records, pp. 9, 19).

Plaintiff does allege in his complaint that, in addition to the above treatment, he should have been evaluated by an orthopedic surgeon and doctors did recommend such an evaluation. (Complaint - Facts, ¶¶ 10, 17; Medical Records, pp. 14, 100)  However, plaintiff's complaint and the evidence provided by the parties demonstrates why plaintiff never underwent such an evaluation.  The initial request was denied on the basis that:

> Criteria was not met . . .  Not [authorized] [s]ince meniscal tears are small and ACL tear should not in itself be disabling, please consider increasing intensity and frequency of his knee strengthening exercises.  He should avoid playing sports that require rapid direction shifts.

[Complaint, Exhibit D; Medical Records, p. 100]  Defendant Pandya  indicated in a report that she agreed with the decision to deny the consultation with a orthopedic surgeon.  (Complaint, Exhibit E; Medical Records, p. 107)  Furthermore, the later request for an evaluation by an orthopedic surgeon was denied by defendant Squiers on the basis that recent research showed that the outcomes of physical therapy and exercise for meniscus tears equal that of surgery. (Complaint, Exhibit G; Medical Records, p. 14)  That decision was later upheld by defendant Edelman on the basis that conservative treatment is appropriate for ACL and meniscus tears. (Complaint, Exhibit G; Medical Records, p. 10)

Plaintiff's essential disagreement is over the treatment he received and that dispute is insufficient to establish a violation of the Eighth Amendment.  As discussed above, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." Graham ex rel. Estate of Graham v. County of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004) (quoting Westlake, 537 F.2d at 860 n. 5). See also Estelle v. Gamble, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that a challenge to a doctor's medical judgment is at most a medical malpractice claim governed by state law). A prisoner's mere disagreement with a doctor's diagnosis or treatment does not state an Eighth Amendment claim of deliberate indifference to a serious medical need. Mabry v. Antonini, 289 Fed. Appx. 895, 902 (6th Cir. 2008); Dodson v. Wilkinson, 304 Fed. Appx. 434, 440 (6th Cir. 2008).

Thus, the evidence in the record negates the subjective element required to prove a deliberate indifference claim and, because plaintiff's allegations simply constitute a difference of opinion between himself and medical personnel regarding his medical treatment, he has failed to demonstrate that a genuine issue of material fact is in dispute. See Estelle, 429 U.S. at 105-06; Westlake, 537 F.2d at 860 n. 5. Therefore, defendants are entitled to summary judgment and their motions should be granted.

## IV. Conclusion

For the reasons discussed above, this court recommends that defendants' motions be **GRANTED**. The claims against the MDOC and for monetary damages against the other defendants in their official capacities should be dismissed on the basis of Eleventh Amendment Immunity. The individual defendants are also entitled to summary judgment on the claims against them. Additionally, this court recommends that defendants Stevens and Armstrong be

dismissed *sua sponte*.  Those two defendants have not yet been served, but even if they were served, the claims against them would fail for the same reasons discussed above.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


                              S/Virginia M. Morgan
                              Virginia M. Morgan
                              United States Magistrate Judge


Dated: May 21, 2010

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on May 21, 2010.

<u>s/Jane Johnson</u>
Case Manager to
Magistrate Judge Virginia M. Morgan